UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BRUCE SPRUILLE, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 6:19-cv-00137-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| J. BARNHART, Warden, | ) | **&** |
| | ) | **ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Bruce Spruille is an inmate at the Federal Correctional Institution in Manchester, Kentucky. Proceeding without a lawyer, Spruille filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he challenges the imposition of disciplinary sanctions against him. [R. 1.] The Respondent filed a response to Spruille's petition [R. 6], Spruille filed a reply brief [R. 7], and the Respondent filed a sur-reply. [R. 11.] Thus, this matter is ripe for a decision from this Court. For the reasons set forth below, the Court will **GRANT** Spruille's petition.

**I**

In July 2018, prison officials searched Spruille's cell and discovered a hole behind a mirror on the wall. [*See* R. 6-2 at 10–13.] The officials searched inside the hole and found a homemade ice pick-style weapon. *See id.* Officials then charged Spruille with possessing a weapon, held a disciplinary hearing, found him guilty, and took away 41 days of his good conduct time. *See id.* Spruille exhausted his administrative remedies, but the Bureau of Prisons (BOP) denied his appeals. [R. 6-1 at 10–15.] Spruille then filed his § 2241 petition with this Court.

In Spruille's submissions to the BOP and this Court, he has never disputed that prison officials found a hole behind the mirror in his cell, as well as a weapon inside the hole. [*See* R. 1 at 5–6.] Instead, Spruille has repeatedly asserted that he did not know about either the hole or the weapon and could not have discovered them because the mirror, which covered the hole, was bolted to the wall with security screws. *Id.* at 6. Spruille has also consistently argued that it would have been a violation of prison rules for him to attempt to remove the security screws so that he could search behind the mirror. *Id.* Finally, Spruille has emphasized that, prior to the incident in question, he noticed that the caulking around the mirror needed to be replaced and specifically asked prison officials to replace it, but they failed to do so. [R. 7 at 3.]

## II

The parties have now fully briefed this matter, and the only question before the Court is whether there was some evidence in the record to support the disciplinary hearing officer's (DHO's) decision in this case. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Selby v. Caruso*, 734 F.3d 554, 558-59 (6th Cir. 2013). This is certainly a low threshold. After all, the Court does not examine the entire record or independently assess the credibility of witnesses. *Hill*, 472 U.S. at 455. Instead, the Court simply asks if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56; *see also Higgs v. Bland*, 888 F.2d 443, 448-49 (6th Cir. 1989) (discussing this standard).

In this case, however, the Respondent has not clearly identified any evidence in the record to support the conclusion that the hole and weapon in Spruille's cell were actually accessible to him. To be sure, the Court recognizes that, in denying Spruille's administrative appeal, the BOP's Regional Director told Spruille that the area in question "was clearly accessible to you." [R. 6-1 at 12.] The Respondent doubled down on this statement in his sur-reply brief, saying,

"The hole behind the mirror [was] located within his cell, and [was] accessible to Spruille." [R. 11 at 2.] But the Respondent still has not identified which evidence in the record, if any, supports these statements; instead, the Respondent simply points to the undisputed fact that the mirror was in Spruille's cell and argues, as a general matter, that prisoners can be resourceful. *See id.* at 1–2. While that may be true, Spruille has consistently maintained that the mirror in his cell was bolted to the wall with security screws such that the hole and weapon were inaccessible to him. In the absence of any evidence in the record to the contrary, the Respondent's conclusory statement that the hole was accessible to Spruille is unconvincing.

Spruille's case is further strengthened by the fact that there are number of problems with the DHO's report in this case. For example, the DHO supported his finding of guilt by saying that Spruille "had plenty of time and opportunity to have found this hole in the wall and could have reported it." [R. 6-2 at 11.] But Spruille *did* notice that the caulking around the mirror needed to be replaced, and he specifically asked prison officials to replace it, but they failed to do so. The DHO even acknowledged in his report that he talked with a prison employee who confirmed that Spruille "did request the caulking be fixed but to his knowledge it had not been done." *Id.* Nevertheless, the DHO told Spruille, rather confusingly, that this "does not excuse you of the behavior." *Id.*

The DHO's conclusion that Spruille possessed a weapon is weakened even further by evidence submitted by Spruille. Following discovery of the weapon, the DHO maintained that Spruille should have found and reported the hole behind the mirror. [*See* R. 1-1 at 4.] However, Spruille points out that, after the incident in question, he was moved to a new cell and asked the Warden to "direct a Facilities crew to come to my current cell and remove the mirror, lockers, table, and light fixtures" so that he could "personally ensure that there is no contraband behind

them." [R. 1-1 at 12.] According to e-mail correspondence attached to Spruille's petition, the authenticity of which is not disputed, the Warden denied Spruille's request and then told him, "If you are found to have tampered or altered any furnishings in your cell, it will be considered destruction of government property." *Id.* This evidence undercuts one of the DHO's principal points—that Spruille should have found and reported the hole behind the mirror in his cell.

Ultimately, the Court is mindful that the case law is filled with decisions in which many courts, including this one, have upheld prison disciplinary decisions in constructive possession cases. The Respondent cites a number of these cases, such as *Haynes v. Quintana*, No. 5:17-cv-009-JMH, 2017 WL 4003023 (E.D. Ky. Sept. 11, 2017), and *Mehmeti v. Warden, FCI Elkton*, No. 4:14-cv-547, 2016 WL 4045448 (N.D. Ohio May 19, 2016). In each of these cases, however, there was at least some evidence that the prohibited item or items in question were actually accessible to the prisoner. *See Haynes*, 2017 WL 4003023, at *2 (pointing out that the evidence in the record showed the air vent in question "was well within reach and accessible" to the prisoner); *Mehmeti*, 2016 WL 4045448, at *8 (explaining how the evidence in the record showed that the weapon in question was "protruding from the bottom of the left side locker" and, thus, was accessible to the prisoner). Here, the Respondent has not clearly identified any such evidence. In light of this fact, as well as the other problems with the DHO's report, Spruille is entitled to habeas relief.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Bruce Spruille's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [**R. 1**] is **GRANTED**;

4

2. As a result, the Respondent shall expunge the relevant disciplinary findings from Spruille's record and restore his lost good conduct time;

3. This action is **STRICKEN** from the Court's docket; and

4. The Court will enter a corresponding Judgment.

This the 27th day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge